**N IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **RRK HOLDING COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 04 C 3944** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **SEARS, ROEBUCK AND CO.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before this Court is defendant Sears, Roebuck and Co.'s ("Defendant" or "Sears")

motion for summary judgment against plaintiff RRK Holding Company ("Plaintiff"). For the

reasons set forth below, Defendant's motion for summary judgment is GRANTED in part and

DENIED in part.


**I.      FACTS**

Plaintiff RRK Holding Company was known as Roto Zip Tool Corporation ("Roto Zip")

prior to July 2003, and sold a cutting tool called the rotary saw ("spiral saw") and its attachments

prior to 2003. Defendant is a major U.S. retailer. Sears Canada Inc. is a separate, publicly-held

Canadian corporation. At all relevant times in this suit, Defendant owned approximately 55% of

the common shares of Sears Canada. Choon Nang Electrical Appliance Manufacturing Ltd.

("Choon Nang") is a Chinese company that manufactures a variety of power tools. Manufacturers Sales Associates ("MSA") is a sales representative for several foreign companies, and sells tools to retail outlets. During the relevant time, MSA represented Choon Nang in North America.

On March 2, 1999, Robert Kopras and Michael Clancy from Roto Zip met with Ray Holbrook and Brenda Coffee from Sears. At the March 2, 1999 meeting, Roto Zip showed its concept of a spiral saw converted into a plunge router (the combination tool) to Sears. Kopras and Clancy brought a confidentiality agreement to the March 2, 1999 meeting, and everyone agreed that the disclosure would be confidential. Defendant wanted to prepare its own nondisclosure statement. On March 11, 1999, Defendant signed a Non-Disclosure Agreement ("NDA") with Roto Zip. Among other things, the NDA provided that "the receiving party shall have no obligation to preserve the confidential nature of any Confidential Information which...is or becomes available to any member of the public by other than unauthorized disclosure, or...was or is independently developed by the receiving party or any of its Sources or Affiliates." Discussions between Roto Zip and Defendant with respect to the proposed combination tool broke down over the price point issue, and Roto Zip never manufactured the proposed product to Defendant.

In 1999 and 2000, Ralph Jones was a power tool buyer for Sears Canada. In that capacity, Jones had contact with Steve Fong of Choon Nang. In late 1999, Jones and Fong discussed a Choon Nang-manufactured cutting tool similar to the Roto Zip Spiral Saw for sale in North America. Choon Nang decided to design a tool that combined the spiral saw and plunge base router. On June 30, 2000, Choon Nang applied for a design patent from the British Patent

Office.  Defendant claims that the application showed its cutting tool with the plunge base router attachment.  Plaintiff claims that the application did not show a combination tool where a spiral saw having a handle or depth guide permitted the tool to be used with one hand or depth guide.

In December 2000, MSA, on behalf of Choon Nang, met with Holbrook, and Holbrook was impressed with Choon Nang's spiral saw development.  In October 2001, Defendant began selling the Choon Nang tool, which was named the Sears Craftsman All-in-One Cutting Tool.  Some versions of the All-in-One Cutting Tool included, among other accessories, a plunge base router attachment.  In August 2001, about two months prior to Defendant's first sale of the All-in-One Cutting Tool, Roto Zip displayed a Roto Zip Spiral Saw with a plunge base router attachment at the National Hardware Show in Chicago.

Plaintiff alleges that Holbrook of Sears disclosed the combination tool concept, a trade secret, to Jones of Sears Canada subsequent to the March 2, 1999 meeting in violation of the NDA.  Jones then discussed the concept with Choon Nang, who designed what became the Sears Craftsman All-in-One Cutting Tool.  The trade secret alleged by Plaintiff in this lawsuit is the concept of a combination product consisting of a spiral saw and an attachable plunge base to permit the product to be also used as a plunge-base router.  Plaintiff's and Defendant's deponents give varying accounts as to whether it was common knowledge that plunge base router attachments could also be attached to cutting tools prior to March 2, 1999.  Plaintiff claims that because Holbrook disclosed the combination tool trade secret to Jones, who disclosed to Choon Nang, Plaintiff suffered excessive economic loss from reduced sales of the combination tool.

On June 10, 2004, and amended on May 26, 2005, Plaintiff filed its complaint with this court against Defendant, alleging Breach of Contract, Trade Secret Misappropriation, and Unjust Enrichment. Defendant moves for summary judgment on all three counts.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, along with any affidavits, show there is no genuine issue of fact. Such a showing entitles the moving party to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 720 (7th Cir. 2004). A genuine issue of material fact exists only when a reasonable factfinder could find for the nonmoving party, based on the record as a whole. The court does not weigh the evidence and it does not make credibility determinations. Instead, the court makes all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). If a party fails to present proof on an essential element of his or her case, then all other facts become necessarily immaterial. *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 509 (7th Cir. 1999).

## III.    ANALYSIS

### A. Trade Secret Misappropriation

The Illinois Trade Secret Act ("ITSA"), 765 ILCS 1065/1, under which this dispute is governed, requires that the plaintiff of a trade secret misappropriation claim demonstrate: (1) the information at issue was a trade secret, and (2) that it was misappropriated and used in the defendant's business. *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003). Defendant challenges both factors in its motion for summary judgment.

Defendant moves for summary judgment on the ground that RRK's concept is not a trade secret. Under the ITSA, a trade secret is

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d). The Act requires that the information be sufficiently secret to impart economic value to both its owner and its competitors because of its relative secrecy, and that the plaintiff took reasonable affirmative measures to maintain the secrecy. *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003); *Mangren Research & Dev. Corp. v. National Chem. Co.*, 87 F.3d 937 (7th Cir. 1996). The existence of a trade secret is a question of fact that is often not obvious, and requires an ad hoc evaluation of the surrounding circumstances. *Learning Curve Toys* at 723. As such, the question of whether certain information constitutes a trade secret "is best resolved by a fact finder after full presentation of evidence from each side." *Id*.

Under the ITSA, the economic value requirement precludes trade secret protection for information that is generally known within an industry, even if not to the public at large. *Mangren Research & Dev. Corp. v. National Chem. Co.*, 87 F.3d 937 (7th Cir. 1996). A plaintiff must prove that the real value of the information lies in the fact that it is not generally known to others who could benefit from using it. *Id*. Defendant argues that the combination of a spiral saw and a

plunge base router attachment was within the general skills and knowledge of the power tool industry, and thus did not qualify the Roto Zip Combination Tool as a trade secret. Defendant cites to *Pope v. Alberto-Culver Co.*, where a tube dispenser for non-lye-based hair relaxer did not qualify as a trade secret simply by being used with a lye-based hair relaxer. 296 Ill. App. 3d 512 (Ill. App. Ct. 1998). Although the contents inside changed, the tube itself remained the same, and thus was not considered a trade secret. This is distinguishable from the case at hand. In the present case, although a spiral saw and a plunge base router were marketed and known as separate products, the combination of the two into a single convertible product was not on the market, and was referred to as "new" and "innovative" by the Defendant itself. The Seventh Circuit has held that "a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *3M v. Pribyl*, 259 F.3d 587, 595 (7th Cir. 2001). The new combination of tools offered a lucrative and competitive product. Home Depot's buyer testified that he did not purchase Roto Zip's Combination Tool, because Defendant offered a similar tool for a lesser price. Defendant's Ex. 19, pp. 8-11. Further, Defendant's manufacturer Choon Nang designated a computerized rendering of its Combination Tool as a "trade secret," suggesting that it was not generally known in the industry. The evidence suggests that there is at least a genuine issue of material fact as to whether the specific combination of the spiral saw and plunge base router was generally known.

Defendant asserts that "simply being the first or only one to use certain information does not in and of itself transform otherwise general knowledge into a trade secret," citing *Web Communs. Group v. Gateway 2000*, 889 F. Supp. 316 (D. Ill. 1995). In *Web Communs*, "stepped

inserts" (a multi-page, staggered magazine insert was "used for years" in the printing industry) was not considered a trade secret when it was first used in a bound national computer magazine. Again, this case is distinguishable from the present case. In *Web Communs*, the stepped inserts were already on the market and in use, the application to a certain type of magazine for the first time did not constitute a trade secret. In the present case, the combination of a spiral saw and plunge router had never been on the market before, and was never used as one combination tool in the past. Thus, the present case is distinguishable from *Web Communs*.

Defendant argues that because the idea came to the Plaintiff "in an instant," it could be "easily duplicated by the industry," and thus not a trade secret. The time it took to come up with an idea is not in itself dispositive. The Seventh Circuit has held that "designers, like many artistic individuals, have intuitive flashes of creativity. Often, that intuitive flash is, in reality, the product of earlier thought and practice in an artistic craft." *Learning Curve* at 729. The Seventh Circuit has stated, "The idea need not be complicated; it may be intrinsically simple and nevertheless qualify as a secret, unless it is common knowledge and, therefore, within the public domain." *Learning Curve* at 724; *Forrest Labs., Inc. V. Pillsbury Co.*, 452 F.2d 621, 624 (7th Cir. 1971).

Defendant asserts that because a customer suggested the combination of the spiral saw and the plunge router to Sear's, it is evidence that the tool was within general knowledge of the power tool industry. One customer's idea is not conclusive evidence that the tool was within the general skills and knowledge of the power tool industry. Moreover, Mr. O'Banion, a design engineer in the tool industry for companies like Black & Decker and AEG Tool, testified that the Sears All-In-One combination tool was the first time he had seen such a tool.

Finally, Defendant claims that there have been routers attached to cutting tools in the past, such as the Rusconi patent filed in 1995 and issued in 1997. Plaintiff asserts that the Rusconi patent disclosed only a plunge base router, not a rotary saw or spiral saw, and thus does not contradict it assertion that the combination tool is a new concept within the industry. There remains a genuine issue of material fact as to whether the tool was within the general skills and knowledge of the power tool industry.

In addition, Plaintiff must also show that the Combination Tool held economic value because it was not generally known. As discussed above, Home Depot's buyer testified that the Sear's All-In-One tool had an competitive edge against the Roto Zip Combination Tool, and the business gained by Sears shows there was economic value in the new product. When Roto Zip debuted its Combination Tool on QVC, it sold nearly 20,000 unit inventory at $119 each in one hour and forty minutes. After its release, Defendant sold nearly one million units in its first 39 months. The Combination Tool brought in substantial sales revenue, and was considered a success because it was a "new product that exceed[ed] expectations." Houck Deposition, Plaintiff's Ex. 29, p. 170. Under these circumstances, a reasonable jury may find that the Combination Tool held economic value because the design was not generally known.

The second requirement of a trade secret requires that the Plaintiff make reasonable efforts to maintain secrecy. A reasonable jury may certainly find that the Plaintiff made reasonable efforts to maintain secrecy. Plaintiff marked its computerized image of the Combination Tool as confidential, had its own confidentiality agreement, as well as signed Sears' Nondisclosure Agreement. Both parties agreed at the March 2, 1999 meeting that the information exchanged

regarding the Combination Tool would be not be disclosed. Under these circumstances, there is a genuine issue of material fact that Plaintiff's Combination Tool was a protectable trade secret.

Having determined that there exists a genuine issue of material fact that Plaintiff's Combination Tool was a trade secret, this court turns to the question of misappropriation. Under the ITSA, a "misappropriation" in pertinent part is: "Disclosure or use of a trade secret of a person without express or implied consent by another person who... at the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was...acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." 765 ILCS 1065/2(B)(II).

Defendant moves for summary judgment on the ground that there was no disclosure of the alleged trade secret from Defendant to Choon Nang, and that Choon Nang independently came up with the concept of combining a spiral saw and plunge base router attachment. In support of this, Defendant claims that, prior to June 30, 2000 when Choon Nang filed a design patent with the British Patent Office, Holbrook never disclosed the concept to anyone. The deposition of Holbrook, Jones and Fong support this claim. Defendant argues that because the concept was not disclosed by Holbrook, there was no misappropriation.

Plaintiff argues that Holbrook and Jones of Sears Canada frequently talked to each other and shared ideas about power tools, and that Holbrook admitted to telling Sears Canada he would buy a spiral saw only if they put a plunge base router attachment on the spiral saw. Kopras Deposition, Plaintiff's Ex. 1, para. 17. Sears Canada, through Jones, then discussed with Choon Nang the idea of making a combination spiral saw and plunge base router tool. According to the Plaintiff, this flow of information took place in the spring of 2000, prior to June 30, 2000, when

Choon Nang filed for a patent. Defendant argues that there is no evidence that a conversation about the combination tool took place between Holbrook and Jones before June 30, 2000, if at all. There exists a genuine issue of material fact as to whether Holbrook disclosed the information to Sears Canada, and if so, at what time the disclosure took place.

For the foregoing reasons, there is a genuine issue of material fact of whether Defendant misappropriated a trade secret, such that a reasonable jury may find for the Plaintiff. As such, Defendant's motion for summary judgment for the misappropriation of a trade secret is denied.

**B. Breach of Contract**

Defendant moves for summary judgment of the alleged breach of the NDA on the same grounds as the trade secret misappropriation count. Specifically, Defendant claims that Choon Nang developed the combination tool concept independently such that Defendant "rightfully received" the information from him, and that the combination was available to other members in the public prior to the sales of Choon Nang's tool by Defendant. For the same reasons as discussed above, there is a genuine issue of material fact as to whether Choon Nang developed the combination tool concept independently, or that the information was indisputably available to the public before release. Thus, Defendant's motion for summary judgment as to the breach of contact count is denied.

**C. Unjust Enrichment**

Defendant moves for summary judgment of the unjust enrichment count on the ground that it is preempted by section 8 of the ITSA. The ITSA preempts an unjust enrichment claim "to the extent that plaintiff purported to state a claim for unjust enrichment based on alleged misappropriation of a trade secret." 765 ILCS 1065/8. Plaintiff argues that because the unjust

enrichment claim is not only a result of the trade secret misappropriation, but also the result of the breach of contract, it is not preempted by the ITSA. Plaintiff cites to *Combined Metals of Chicago Ltd. Pshp. v. Airtek, Inc*., where it was determined that a dismissal of the unjust enrichment claim was premature when the trade secret misappropriation claim may yet be dismissed, pending amendment. 985 F. Supp. 827 (D. Ill. 1997). This is inapposite to the present case, where a trade secret misappropriation claim is validly asserted. Where the trade secret misappropriation claim is present, it preempts an unjust enrichment claim under section 8 of the ITSA. Thus, Defendant's motion for summary judgment of the unjust enrichment count is granted.

IV.     **CONCLUSION**

        For the reasons stated above, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

                                        Enter:


                                        /s/David H. Coar

                                        _____

                                        David H. Coar

                                        United States District Judge

**Dated: February 14, 2007**