# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RRK Holding Company,<br>a Wisconsin Corporation | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 1:04-cv-03944 |
| | ) | |
| v. | ) | Hon. David H. Coar |
| | ) | |
| Sears, Roebuck and Co.,<br>a New York Corporation | ) | Magistrate Judge Nan R. Nolan |
| | ) | |
| *Defendant.* | | |

## SEARS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL, ON THE ISSUE OF LIABILITY

Richard D. Harris (IL Bar No. 1137913)
Mark R. Galis (IL Bar No. 6206938)
Jeffrey G. Mote (IL Bar No. 6243534)
Cameron M. Nelson (IL Bar No. 6275585)
GREENBERG TRAURIG LLP
77 West Wacker Drive
Suite 2500
Chicago, Illinois 60601
(312) 456-8400

# TABLE OF CONTENTS

I. Introduction .................................................................................................... 1

II. Background .................................................................................................... 1

III. The Relevant Legal Standards ..................................................................... 6

IV. Argument ...................................................................................................... 9

    A. The Concept of a Plunge Base Accessory for a Router (Whether Called a "Spiral Saw," "Rotary Saw," or "Rotary Cutting Tool") Was Not a Trade Secre ..................................... 9

        2. "Spiral Saws," "Rotary Saws," "Rotary Cutting Tools," "Rotary Tools" And "Spiral Cutting Tools" Are All Router.......... .............................................................. 12

        4. The Concept Of Plunge Base Accessories For Even "Spiral Saws" and "rotary saws" Was In The Public Domai ................................................................................. 15

    B. Sears Did Not Misappropriate RRK's Alleged Trade Secret.............................................. 17

    C. RRK Confused and Inflamed The Jury ................................................................................ 18

        1. RRK Misused The Spiral Saw Trademark....................................................................... 18

        2. RRK Mischaracterized Statements In Documents As Having Been Adopted By Sears . 20

        3. "Categories" and Advertising Did Not Render RRK's Product "New\............................ 22

        4. Sears' Proposed Demonstration Would Have Mitigated RRK's Confusion ................... 23

        5. RRK Violated The Court's Ruling on Sears' Motion In Limine ...................................... 24

        6. RRK Made Every Effort To Inflame The Jury ................................................................ 25

V. Conclusion ...................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Mount Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 902 (7th Cir. 2007)............................ 6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ................................................ 7

*Appelbaum v. Milwaukee Metropolitan Sewerage Dist.*, 340 F.3d 573, 578 (7th Cir. 2003)......... 7

*Felton v. Spiro*, 78 F. 576, 582 (6th Cir. 1897) ............................................................ 9

*Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir. 2000)......................... 7

*Menefee v. General Electric Company*, 548 F.Supp. 619, 621 (N.D.Ill. 1982)............................ 24

*Mid-America Tablewares, Inc., v. Mogi Trading Co., LTD.*, 100 F.3d 1353, 1367 (7th Cir. 1996) ........................................................................................................................................ 8

*Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1173 (7th Cir. 2002) .............................................. 8

*Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) ............................................ 19

*Millbrook*, 280 F.3d at 1182 .................................................................................... 20

*Pagan v. Shoney's, Inc.*, 931 F.2d 334, 338 (5th Cir. 1991) .............................................. 9

*Perfetti v. First National Bank of Chicago*, 950 F.2d 449, 456 (7th Cir. 1991) ...................... 8

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)................................... 7

*Roton Barrier, Inc. v. The Stanley Works, Inc.*, 79 F.3d 1112, 1120 (Fed. Cir. 1996)............... 20

*See Veliz v. Crown Lift Trucks*, 714 F.Supp. 49 (E.D.N.Y. 1989).......................................... 26

*TI Group Automotive Systems, Inc. v. VDO North America, LLC.*, 375 F.3d 1126, 1133 (Fed. Cir. 2004) .................................................................................................................... 7

*TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 881 (7th Cir. 1997) ............... 14

*U.S. v. DeLuca*, 2001 WL 1654770 (N.D.Ill.) .............................................................. 22

*U.S. v. Waldemer*, 50 F.3d 1379, 1384 (7th Cir. 1995) .................................................... 28

*Williams v. Nichols*, 266 F.2d 389, 393 (4th Cir. 1959); *see also Polk v. Montgomery County*, 875 F.2d 316, 316+ (4th. Cir. 1989) ........................................................................... 9

*Winters v. Fru-Con Inc.*, 498 F.3d 734, 745-46 (7th Cir. 2007 ........................................... 6


**Rules**

Fed.R.Civ.P. 50(a) .................................................................................................. 10

Fed.R.Civ.P. 59(d) .................................................................................................. 11

Fed.R.Evid. 401 and 403........................................................................................... 27

Fed.R.Evid. 801(d)(2)(B)........................................................................................... 23

Defendant Sears, Roebuck and Co. ("Sears") renews its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) on the issue if liability. In the alternative, Sears moves for a new trial pursuant to Federal Rule of Civil Procedure 59.

# I INTRODUCTION

At trial, Sears moved for judgment as a matter of law on the grounds that (a) RRK did not have a trade secret in anything but its own single-handle, single-post plunge base accessory, and (b) that third parties Sears Canada and Choon Nang independently developed their own plunge base accessory without any reference to or derivation from the alleged trade secret.[1] (Tr. 723-727, 1360-1362; Docket Nos. 273, 276.)[2] Sears hereby renews its motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b). RRK has not met its burden of proving misappropriation, that it had a trade secret in the general concept of a plunge base accessory because plunge base accessories were well known, and RRK's tool is indistinguishable from those tools which already had plunge base accessories, by its own admission. RRK has also not met its burden of proving misappropriation because mere coincidence is not sufficient to prove misappropriation, an intentional tort. Sears also moves for a new trial pursuant to Fed.R.Civ.P. 59 because the clear weight of the evidence is that RRK's alleged trade secret was limited to its single-handle, single-post design, because the clear weight of the evidence is that no misappropriation occurred, and because of RRK's incited the jury against foreign manufacturers, misused the "Spiral Saw" trademark, and mischaracterized statements as having been "adopted" by Sears.

# II BACKGROUND

A router is a hand-held power tool with a housing, high speed electric motor (typically

---

[1] Sears' addresses the issues of damages and willfulness in separate briefs.
[2] Sears has submitted trial transcripts and exhibits in support of their post-trial motions in a separate paper filing.

25,000 to 35,000 rpm) and a collet designed to hold a bit coaxial with the axis on the motor. (See, e.g., DX 110, pp. 37-41.) In the '70's and '80's, contractors used laminate trimmers (which are merely small routers) to cut drywall. (Tr. 932:18-937:25.) One such tool was manufactured by Makita; like all routers, it had a housing, electric motor, and a collet, and spun a bit at high speeds. (Id; DX 171.) A collet can hold any of a variety of readily available router bits. (Tr. 77:8-77:11, 90:4-90:16, 939:15-953:11, 998:19-999:1, 1058:12-1058:23; DX 158, DX 164, DX 110, pp. 61-62.)



(DX110)



(From: *Cutting Drywall*, Fine Homebuilding 134, pp. 70-75
Oct. 1, 2000)



(DX171)

Bob Kopras, the owner of RRK, developed his own *brand* of drywall router in the '70's. (Tr. 67:20-70:9; 936:8-37:15; 1254:21-1255:13.) It, too had a housing, electric motor, and collet, and spun a bit at high speeds. (Tr. 1254:21-1255:13; DX 174.) The base on Mr. Kopras' drywall router was less substantial than that found on other routers, and mostly served as a depth guide. (DX 134, Col. 3 Lns. 8-10.) Mr. Kopras' product used a ¼" spiral cutting bit, just like the Makita, and was approximately the same size as Makita's laminate trimmer. (DX 134, Col. 1, Ln. 53; DX 171; DX 174.) Mr. Kopras's new brand of drywall router had only limited success in the 1970's and 1980's. Makita's Vice President of Sales did not even hear of Mr. Kopras' product until the 1990's, though he repeatedly observed contractors using Makita's laminate trimmers to cut drywall during that time. (Tr. 953:12-953:22.)

By the early 1990's, there were other mini-routers on the market. Dremel marketed its products as "rotary tools." (Tr. 180:1-180:5, 951:18-952:6; DX 170.) Dremel sold a router base for its rotary tool, and also sold router bits designed to cut drywall along with a smaller fixed base. (Tr. 183:11-184:10, 956:21-956:23, 1002:8-1004:6; DX 126; DX 168; DX 170: DX 297-98.) While rotary tools are generally smaller than other routers, they are structurally identical. (DX 110, 168, 170, 171, 172, 174; Tr. 1008:3-1008:11.) Rotary tools also had a housing, electric motor, and a collet for spinning a bit at high speeds -- speeds identical to the speeds at which other routers like the Makita laminate trimmer and Mr. Kopras' drywall router operated. (Tr. 366:4-366:5, 997:6-998:2, 1011:17-1011:23, 1061:25-1062:10.)

In the mid 1990's, RRK developed a couple new router bits that purportedly cut better. (Tr. 72:17-73:22; DX 135).[3] Of course, bits for cutting wood were already widely available for

---

[3] DX 135 was not discussed at trial or offered into evidence, as it would have been cumulative with DX 134, which contains the same admissions regarding "router bits."

routers of all sizes; RRK does not claim to have invented the router bit. (See, e.g., DX 110, pp. 61-62, and DX 135, Col. 1, Lns. 37-66.) RRK also added a removable handle to its product, and renamed its "drywall cutter" the "SpiraCut." (PX 2, "Spiracut Video.")[4] Again, accessory handles for routers were already well known. (See, e.g., DX 110, p. 39 "2 HP D-Handle Router.") Aside from this new router bit and the detachable handle, the *structure* of RRK's "drywall" cutter did not change in any way when it was renamed the SpiraCut. (See, e.g., PX 2, PX 19, DX 174.)[5] RRK later renamed its tool using the registered trademark "Spiral Saw," again making no changes to the *structure* of its tool. (Id; DX 270.) The RRK tool, whatever name it was called, be it "drywall router," "SpiraCut," "Spiral Saw," rotary cutting tool, or spiral cutting tool, always had the exact same structure, namely a housing, electric motor, collet and a bit spun at high speeds. (DX134, DX 138, DX 140, DX 144, DX 146, DX 150, DX 174, PX 2; Tr. 153:12-154:7.) RRK began heavily marketing its old tool under this new name, "Spiral Saw," as a "new category" of tool. In so doing RRK transformed what had been an incidental use of a small router into a primary use, in essence creating a new "category" of tools targeted for this use. It even trademarked the names "SpiraCut" and "Spiral Saw" to align its marketing efforts with its product name. During trial, RRK spent a lot of effort leveraging this marketing-driven distinction to create the false impression in jurors that "Spiral Saw" itself was somehow unique relative to other rotary cutting tools. For instance, at trial, RRK attempted to categorize every rotary cutting tool other than its Spiral Saw as a "spiral cutting tool", a "rotary saw", a "laminate trimmer", a "rotary tool" or even a "router." But stripped of all the marketing spin and various associated trademarks, RRK's "Spiral Saw" is nothing more than a combination of a housing, an

---

[4] RRK did not mark the video with an exhibit number, but played it before the jury.
[5] Though Mr. Clancy at one point claimed that the "SpiraCut" tool was "completely different" from tools that came later, he provided no basis for that statement and, more importantly, it is contradicted by RRK's own documents. The SpiraCut ad itself calls the tool a "Spiral Saw." (PX 2, p. 2.)

electric motor and a collet that holds a spinning bit, just like every other rotary cutting tool that has been on the market for years prior. Indeed, in contradiction to its litigation-driven position, RRK admitted as much under oath in its filings before the U.S. Patent Office. And, just as the "Spiral Saw" rotary cutting tool was not unique and thus not a trade secret, attaching a plunge base to the tool was not a trade secret. Plunge bases have been attached to rotary cutting tools for years prior to RRK's proposal to Sears.

In 1999, RRK proposed Craftsman-branded editions of its "Spiral Saw" router to Sears, along with a series of accessories, including a one-handed, one post plunge base accessory. (Tr. 566:22-570:16; PX 19, PX 20, DX 9) Sears was not interested in RRK's proposal because the price was too high and the value too low. As a result, Sears paid no attention to the proposed accessories. (Id.) Later, in late 2000 and early 2001, Choon Nang through its manufacturing representative MSA proposed a Craftsman-branded rotary cutting tool[6] to Sears, which included a two-handled, two-post plunge base accessory, among many other accessories. (Tr. 586:4-91:16.) The Choon Nang plunge base accessory looked very much like the several existing dual-post, dual-handle plunge base accessories for other routers, laminate trimmers, and rotary tools already on the market. (DX 110, DX 152, DX 232, DX 297-98.) Sears accepted the proposed Choon Nang tool, with all of its accessories, and eventually sold it to consumers for approximately half the price that RRK proposed for its Craftsman-branded version of the same tool (with far fewer accessories). (Tr. 586:4-91:16.)

In 2002, after Sears had been selling the Choon-Nang manufactured tool for about a year, RRK accused Sears of "misappropriating" the concept of "adding an accessory base to a cut-out tool," and particularly an accessory base "similar to a conventional router." (PX 84.) Sears advised RRK that there was nothing new about plunge base accessories and, for a time, RRK

---

[6] Sears submits that the terms "rotary cutting tool" and "router" are wholly synonymous.

made no further comment. (Tr. 303:9-306:7, 313:14-315:20, 607:23-608:15; DX 15.) Years later, RRK brought this suit and, despite its own prior and repeated admissions under oath that a "Spiral Saw" is a router, now claims that a "Spiral Saw" was "totally different" from other tools, and as a result the idea of putting a plunge base accessory on it was not generally known to the power tool industry. (See, e.g., Tr. 10:16, 18:25, 336:6, 401:20-402:5, 404:2-404:12, 406:19-407:2, 1363:4, 1373:22, 1376:11.)

RRK cannot now contradict its earlier positions, under oath, before the Patent Office. The simple and uncontroverted fact is that the "Spiral Saw" is a router -- housing, high speed electric motor, and collet for spinning a bit at high speeds -- that is only "totally different" because that is how RRK chose to market its tool. RRK purposely confused the jury at trial by focusing on the alleged novelty of using the "Spiral Saw" brand router as a "saw" instead of focusing on the plunge base accessory, and by treating its trademark "Spiral Saw" as a unique product, instead of a source designation. Further, RRK incited the jury to make its decision based on prejudice against foreign companies who purportedly think that "intellectual property rights" aren't "important," and to find "spoliation" where there was none.

## III    THE RELEVANT LEGAL STANDARDS

"Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Winters v. Fru-Con Inc.*, 498 F.3d 734, 745-46 (7th Cir. 2007) (*quoting Alexander v. Mount Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 902 (7th Cir. 2007)). "The standard governing a Rule 50 motion mirrors that employed in evaluation of a summary judgment motion." *Appelbaum v. Milwaukee Metropolitan Sewerage Dist.*, 340 F.3d 573, 578 (7th Cir. 2003) (*citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)); *see also Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir. 2000)

(recognizing that an important difference between a motion for summary judgment and a motion for judgment as a matter of law is that in the context of a motion for judgment as a matter of law the Court knows exactly what evidence was put before the jury).

Where there is insufficient evidence for a reasonable jury to find for Plaintiff on a claim, judgment as a matter of law against Plaintiff is warranted on that claim. *See* Fed.R.Civ.P. 50(a). While the evidence and fair inferences should be considered in the light most favorable to the nonmoving party, judgment as a matter of law is warranted where the nonmoving party rests solely on "conclusory allegations, improbable inferences, and unsupported speculation." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *TI Group Automotive Systems, Inc. v. VDO North America, LLC.*, 375 F.3d 1126, 1133 (Fed. Cir. 2004) (According to Rule 50(a), judgment as a matter of law is appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue").

This Court's role is not to second guess the jury's view of the contested evidence, but to determine whether, given the totality of the evidence, the plaintiff presented enough evidence to support its claim. *Massey,* 226 F.3d at 924. To avoid a judgment as a matter of law, "a plaintiff must do more than merely argue that the jury might have chosen to disbelieve all of the defendant's evidence...A plaintiff must offer substantial evidence to support the argument." *Perfetti v. First National Bank of Chicago*, 950 F.2d 449, 456 (7th Cir. 1991); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1173 (7th Cir. 2002) ("[A] mere scintilla of supporting evidence will not suffice").

Even if a court does not grant judgment as a matter of law under Rule 50, it still may grant a new trial under Rule 59. Fed.R.Civ.P. 59 authorizes the trial court to order a new trial "...on all or part of the issues...for any of the reasons for which new trials have heretofore been

granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). A motion for a new trial pursuant to Rule 59 may be granted where the verdict is against the weight of the evidence, where damages are excessive, or where the trial was not fair to the moving party for some other reason, such as the admission or rejection of evidence or jury instructions. *Mid-America Tablewares, Inc., v. Mogi Trading Co., LTD.*, 100 F.3d 1353, 1367 (7th Cir. 1996). In contrast to directed verdicts and judgments notwithstanding verdicts, which use the "light most favorable to the nonmovant" standard, for the purposes of a motion for new trial the Court exercises its own independent judgment after a weighing of all the evidence and any other pertinent factors in determining whether the verdict is against the clear weight of the evidence or would result in a miscarriage of justice. *Williams v. Nichols*, 266 F.2d 389, 393 (4th Cir. 1959); *see also Polk v. Montgomery County*, 875 F.2d 316, 316+ (4th. Cir. 1989); *Pagan v. Shoney's, Inc.*, 931 F.2d 334, 338 (5th Cir. 1991); *Felton v. Spiro*, 78 F. 576, 582 (6th Cir. 1897).

A new trial is also appropriate where the plaintiff presents evidence and argument that confuses, distracts, or inflames the jury, as such evidence and argument divert the jury from the relevant issues in the case and result in a miscarriage of justice. Where the evidence regarding a "key fact" is "hazy," the plaintiff presents evidence that is irrelevant and "contribute[s] to the jury's confusion," or the plaintiff makes arguments that "simply distract[]" the jury from the facts that are critical to the core issues in the case, a new trial should be granted under Rule 59. *Mesman v. Crane Pro Services*, 409 F.3d 846, 852 (7th Cir. 2005.)

In deciding whether there are grounds for a new trial, the Court is not limited to the grounds raised by Sears in this or its accompanying post-trial motions. The Court may order a new trial "for a reason not stated in the motion," provided it gives the parties notice and an opportunity to be heard on the grounds for ordering a new trial. Fed.R.Civ.P. 59(d).

## IV ARGUMENT

### A. The Concept of a Plunge Base Accessory for a Router (Whether Called a "Spiral Saw," "Rotary Saw," or "Rotary Cutting Tool") Was Not a Trade Secret

Sears' plunge base accessory is nothing like RRK's plunge base accessory. Sears'

accessory has two plunge posts, two handles, and a circular base; the plunge base accessory RRK

disclosed to Sears uses a single plunge post parallel to and inside of the handle:

 

Because of these obvious dissimilarities, RRK argued that its trade secret was far broader

than its own single-handle, single-post plunge base design -- it argued that its trade secret

covered *any* plunge base accessory. Expanding its alleged trade secret to cover *any* plunge base

accessory is not enough, however, because Sears' plunge base accessory is too similar to other

plunge base accessories already on the market. RRK attempts to render those devices irrelevant

by claiming that a "Spiral Saw" was something "totally different" from a router, laminate

trimmer, or rotary tool. But RRK's claim that its trade secret covers *any* plunge base accessory

for a "Spiral Saw" or "rotary saw" is untenable in light of its own admissions and the undisputed

facts.

First, RRK does not dispute that double-post plunge bases for all types of routers were known throughout the industry. Second, RRK *admitted* before this lawsuit that its "Spiral Saw" product is a type of router. Third, RRK's own marketing materials and employees concede that RRK's trade secret was its single handle, single post design -- not the general concept of a plunge base itself. Fourth, there is undisputed evidence that both the industry and public had already conceived of the idea of a plunge base for very products at issue in this case. Finally, even if one accepts RRK's unsupported position that "Spiral Saws," routers, laminate trimmers and rotary tools are "completely different" tools, then the presence of plunge base accessories for three of these four "completely different" tools proves that the concept of a plunge base accessory for even a "completely different" tool was known in the industry and to the public.

### 1. Double-Post Plunge Base Accessories Were Ubiquitous

It is beyond question that plunge base accessories like the one Sears sold with its All-In-One Cutting tool were well known to the power tool industry and the general public. They have been sold for plunge-base routers...

 

...and laminate trimmers...



(Freud Laminate Trimmer [6])



(DX152)

…and even small "rotary tools:"



(DX297)



(DX152)

Sears' plunge base accessory is nearly identical to these pre-existing plunge base accessories, but bears no resemblance tc RRK's single-handle, single-post plunge base accessory.

 

(DX174)                (DX152)

**2.**     **"Spiral Saws," "Rotary Saws," "Rotary Cutting Tools," "Rotary Tools" And "Spiral Cutting Tools" Are All Routers**

Though RRK made great effort, through attorney argument, to differentiate its "Spiral Saw" brand tools from routers at trial, it offered no *evidence* to support that argument. The term "Spiral Saw" designates a *source*, not a tool, as a matter of law. *TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 881 (7th Cir. 1997). Long before this lawsuit, RRK conceded that a "Spiral Saw," a "Rotary Saw," a "Rotary Cutting Tool" and a "Spiral Cutting Tool" are all merely alternate names for routers.

RRK's claim that a "Spiral Saw" is "completely different" from a router, laminate trimmer, or rotary tool claim flatly contradicts statements it made under oath before the United States Patent and Trademark Office. When it filed for patent protection for its bit designs, RRK called them *router* bits and referred to its drywall-cutting tools as *routers*. (DX 134 at Col. 1 Lns. 5-6, 19-21, Col. 2 Lns. 67-68, Col. 3 Lns. 8-10, 51). When RRK filed for patent protection on its one-post, one-handled plunge base design, it explicitly described hand-held routers as "similar" power tools. (DX 140, Col. 5, Lns. 7-10.) In a later application directed to a jig for picture frames

it again lumped "routers, rotary tools, or cut-out tools" together. (DX 150, Col. 2 Lns. 38-41.) RRK also lumped Dremel® brand rotary tools together with its own tools. (DX 144, "Other Publications.") Throughout its nearly twenty patents, RRK repeatedly defines a "spiral cutting tool" as having merely "an electric motor that rotates a spiral cutting tool bit at very high speeds" -- a definition that obviously describes any router equipped with a spiral cutting bit. (See, e.g., DX 138, Col. 1 Lns. 11-13; DX 140, Col. 1, Lns. 12-14.)

RRK's admissions that its tool is a router are not surprising, since there are no structural differences between a router, a laminate trimmer, a "Spiral Saw," and a rotary tool, aside from size and the type of base used. (Tr. 362:25-363:1; 1009:8-1017:16, 1054:16-1062:10.) All of them include a housing, electric motor and a co-axial collet attached at one end of the motor. (Id.) All of them are capable of accepting a variety of router bits, including spiral cutting bits, straight cutting bits, roundover bits, and v-groove bits. (Id.) All of these router bits could be used to cut, groove, or shape a variety of materials, including drywall and wood. (Id.) The *only* difference between any of these tools is merely size, which naturally affects the *functions* a consumer uses the tool for. (312:11-312:14; 362:20-363:1; 655:17-656:9; 1004:13-1004:16; 1016:24-1017:16; 1059:21-1060:2; See also, DX 168, DX 170, DX 171, DX 174 and DX 175.)

The undisputed availability of plunge bases for the different sizes of these tools establishes that an accessory for any one size is publicly known to be a potential accessory for any other size. RRK's public[7] admissions that its "Spiral Saw" brand tools are also routers naturally leads to the conclusion that known accessories could easily be migrated to "Spiral Saw" brand tools. In fact, RRK admits that it has previously done just that -- when it developed a flex shaft for its "Spiral Saw," it copied the idea from Dremel's rotary tool flex shafts. (Tr. 1260:24-

---

[7] RRK's admissions are valuable not only as admissions, but also for the fact that they are public statements that RRK itself put into the public domain.

1262:11.) And when RRK applied for a patent on the broad concept of a plunge-base accessory, the USPTO rejected RRK's broad patent claims on the grounds that similar structures were already known to the public for *routers* and *hand-held electric drills*. (See DX 141, Excerpt of Prosecution History of U.S. Patent No. 6,443,676; DX 83; DX 96.) RRK did not complain to the USPTO that routers and electric drills were "completely different." Instead, it accepted the USPTO's rejection and adopted narrower patent claims, limited to its single-post, single handle design.[8] (DX141; DX 83; DX 96.) The only reason RRK makes the argument here, but did not do so before the patent office, is in the hope that those without technical backgrounds or experience in the power tool industry will be fooled into believing arguments that neither the Patent Office nor anyone in the power tool industry would ever take seriously.

Though it had the burden of establishing that its alleged trade secret was not already in the public domain, RRK offered no evidence that its tools were not routers, or that it was not known to the public to put router accessories on "Spiral Saw" tools. RRK did offer conclusory statements from interested witnesses that a "Spiral Saw" was "completely different" from other tools, and that its plunge base router accessory was "completely different" from what was available on the marketplace, but never established that those witnesses were qualified to offer those opinions. Nor did those witnesses describe *how* the "Spiral Saw" or plunge base accessory was "completely different." RRK also offered evidence its "Spiral Saw" product was considered a "success," but never established that "success" was the result of anything but heavy marketing. RRK provided no expert testimony to rebut Sears' technical expert, who testified that a "Spiral

---

[8] The Court declined to admit RRK's patent prosecution histories at trial, on the grounds that doing so would require instructions on complex issues of patent law. The Court also expressed concern regarding the probative value of prosecution histories and the statements contained therein. But a patent examiner is presumed to be one of ordinary skill in the art. *Gabrielidis v. Prince Sports Group, Inc.*, 2000 WL 1648134 (Fed. Cir.) (unpublished decision); *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1348 (Fed. Cir. 2005). As a result, the Court should consider the examiner's view of the art to be equivalent to that of RRK's competitors in the power tool industry. Moreover, while Sears believes the patent examiner's determination is highly probative in and of itself, RRK's utter *failure* to dispute the patent examiner's finding is even more probative.

Saw" was just a router, and that a plunge base accessory for a "Spiral Saw" was well within the grasp of the public. And RRK offered no evidence that its prior admissions that "Spiral Saws" were routers would be disregarded by the public or the power tool industry.

It is also undisputed that when RRK was marketing its product to the public, it *never* claimed the mere concept of a plunge base accessory as exclusive. Instead, RRK proclaimed to the public that its innovation was the "single-handle design" and "exclusive self locking plunge mechanism." (DX 63, p. 17; Tr. 837.) RRK's own Vice President of Sales, Craig Rae, confirmed that those features were the ones RRK considered innovative and the ones that RRK emphasized when he was calling on customers. (Tr. 837.) These public statements and admissions by RRK are consistent with the view that double-shaft, double-post plunge base accessories were well known in the industry, even for "Spiral Saws," and that RRK sought to *distinguish* its plunge base accessory from the others by emphasizing its single-handle, single-post features. RRK again offered no evidence that, before this lawsuit, it believed its innovation was the mere *existence* of a plunge base accessory for a "Spiral Saw," or that it ever considered its plunge base accessory a "combination tool." Those concepts arose only incidental to this litigation, and are unsupported by any evidence prior to this litigation.

### 3. The Concept Of Plunge Base Accessories For Even "Spiral Saws" and "rotary saws" Was In The Public Domain

Though RRK argued that nobody had ever put a plunge base accessory on a "Spiral Saw," the undisputed evidence is that at least a competitor and, separately, a member of the public, conceived of a plunge base accessory for a Spiral Saw. RRK concedes that the Dremel Advantage product was a direct competitor -- it was bigger than Dremel's other tools and therefore branded as a "rotary saw." (Tr. 311:14-312:16.) The Dremel Advantage was on the market in 2001, before Sears' All-In-One Cutting Tool even entered the market. (Tr. 808:25-

810:14.) In the fourth quarter of 2002, Dremel® introduced a plunge base accessory which looked very much like Sears' plunge base accessory. (Tr. 829:24-831:11.) RRK does not allege that Dremel misappropriated its plunge base accessory concept from RRK.

That Dremel came out with a plunge base accessory about a year after RRK and Sears introduced their own plunge base accessories is evidence that such accessories were well within the industry's grasp. RRK argued, and the jury apparently accepted, that it would take 36 months for a competitor to legitimately reverse engineer its product -- starting from scratch unquestionably takes longer. (Tr. 1391.) That means that Dremel must have begun working on its own plunge base accessory *at least as early as the fourth quarter of 1999*. Thus, taking RRK's argument and the jury's findings at face value, Dremel was in possession of the alleged trade secret just months after RRK showed it to Sears, if not sooner.[9] The alleged trade secret was therefore generally known in the power tool industry, and as a result is not a trade secret. RRK offered no evidence to the contrary.

RRK also did not dispute that in April, 2001, RRK customer John Riford emailed RRK's customer service department. (Tr. 192:17-201:18; DX 21.) In his email he states that he regularly does sign routing with RRK's so-called "spiral saw" -- further illustrating that the public was well aware that RRK's "Spiral Saw" was, in fact, a router. Mr. Riford went on to suggest that RRK make a plunge base for its so-called "Spiral Saw" tool, showing again that the public was aware of the general concept of a plunge base accessory, which is what RRK alleged its trade secret to be. (DX 21.) This undisputed evidence merely confirms that RRK could not have had a trade secret in the "general concept" of a plunge base accessory for a "Spiral Saw," because it was already generally known to the industry and to the public.

---

[9] Of course, the other possibility is that Dremel copied Sears' product and brought their competing product to market in less than a year, and therefore Mr. O'Banion was correct when he said it would take five and a half to eight months, not thirty six months, to manufacture a plunge base accessory.

Finally, even if one accepts RRK's position that rotary tools, laminate trimmers, "Spiral Saws," and routers were all "completely different" tools in "completely different" categories, then it is undisputed that the industry and the public were generally aware that plunge base accessories could be put on "completely different" tools. RRK offered no evidence that a member of the public or power tool industry would not also conclude that that a plunge base accessory could be easily adapted to RRK's "completely different" tool, since it had been done for at least three other "completely different" types of router tools.

### 4. Sears Did Not Misappropriate RRK's Alleged Trade Secret

RRK offered no evidence of misappropriation, and instead merely argued misappropriation in the *absence* of supporting evidence. The sheer dissimilarity between the two plunge base accessories at issue counsels against any finding that Sears "misappropriated" RRK's plunge base accessory or sought to have the RRK plunge base "knocked off." At trial, Sears offered evidence that the plunge base accessory for its All-in-One tool was conceived of by Ralph Jones, a Sears Canada employee, based entirely on his years of experience as a power tool buyer as well as his extensive personal experience as a woodworker. (Tr. 730:4-758:13.) Sears Canada is an entirely separate entity and not party to this suit. Ralph Jones and Ray Holbrook confirmed under oath that they never discussed a plunge base accessory -- they only spoke a couple of times a year, at most, and always regarding *existing* products. (Tr. 611:19-613:9; 731:7-734:7.)

RRK offered absolutely *no* affirmative evidence of misappropriation -- and RRK *must* present *substantial* affirmative evidence. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002). That is particularly true where, as here, Plaintiff seeks punitive damages. RRK cannot, as it did here, simply ask the jury to disregard witnesses' testimony without at least some affirmative evidence to the contrary on which the jury could rely. *Id.* The *only* evidence that

RRK offered was that Ralph Jones happened to come up with the general idea of a plunge base accessory in *late* 1999, the same year that RRK showed its *particular* plunge base accessory to Ray Holbrook at a different company hundreds of miles away. Misappropriation, by definition, is an intentional tort. *Roton Barrier, Inc. v. The Stanley Works, Inc.*, 79 F.3d 1112, 1120 (Fed. Cir. 1996). Mere coincidence is not evidence. Moreover, there is ample evidence to show that this "coincidence" is not much of a coincidence -- Ralph Jones had ample inspiration, from his own extensive experience with woodworking tools to the Gunther Bohler mini-tool plunge router he had personally observed, which locked by twisting the handles just as the plunge base accessory for the Sears All-In-One Cutting Tool eventually did. (Tr. 747:24-749:24; DX 232.) Without some affirmative evidence calling into question Ralph Jones' and Ray Holbrook's testimony, RRK must lose. *Millbrook*, 280 F.3d at 1182.

## B.     RRK Confused and Inflamed The Jury

Even if the Court does not grant judgment as a matter of law on the issues raised above, the Court should still grant a new trial because of RRK's persistent mischaracterization of evidence, including its misuse of the "Spiral Saw" trademark, its misuse of allegedly internal Sears documents, and its efforts to inflame the jury against foreign manufacturers. All of these issues confused the jury, distracted from the core issues of the case, and inflamed the jury.

### 1.     RRK Misused The Spiral Saw Trademark

The Court should grant Sears a new trial because RRK confused the jury by misusing its "Spiral Saw" trademark to argue that a "Spiral Saw" is a distinct tool, and distract the jury from the fact that RRK had *admitted* the tool was a type of a router. RRK also misused the "Spiral Saw" trademark to imply that Sears had misappropriated the "Spiral Saw" itself, as opposed to the plunge base accessory which is at issue in this case.

RRK impermissibly argued that a "Spiral Saw" was a "completely different" tool and that

nobody had ever put a plunge base on a "Spiral Saw" before. (See, e.g., 401:20-402:5, 1375-1379, 1386:4, 1388:19-1388:20, 1429:16-1430:5.) That argument had no purpose but to confuse the jury; *nobody* but RRK could *ever* put a plunge base accessory on a "Spiral Saw," since RRK is the only company in the world that can lawfully call its product a "Spiral Saw." "Spiral Saw" is a *source*, not a *product*, and any use of the term to define a *product* is misleading.

RRK never defined how a "Spiral Saw" was purportedly different from a router. It offered vague testimony from Mr. Kopras how his could cut different materials in any direction, but routers, laminate trimmers and rotary tools already did all of those things. (Compare Tr. 74:1-76:7 with Tr. 999:20-1017:16.) And while RRK repeatedly emphasized its removable handle as a distinguishing feature (Tr. 1036:23, 1041:4, 1063:18-1063:27), the fact remains it was *removable*. The product performed the same functions with and without the handle; it was merely a matter of user preference. (Tr. 811:19-811:25.) The CPSC eventually forced RRK to put stickers on its product advising the user to grasp the tool by its housing. (Tr. 798-799, 834-837.)

Despite being wholly unable to define any *physical* differences (other than size) between a "Spiral Saw" and a router, laminate trimmer, or rotary tool, RRK repeatedly argued that there was no such thing as a "Spiral Saw" with a plunge base. (See, e.g., Tr. 13:5-13:6, 109:4-109:7, 125:3-125:9, 493:20-493:24, 1031:20-1032:6, 1036:23-1041:4; But see 336:11-337:6, equating Dewalt "cutout tool" and Makita "laminate trimmer.") Nearly every question of every witness from RRK's counsel used the term "Spiral Saw," even, and especially, when referring to Sears' tool, *which can never be a "Spiral Saw" as a matter of law*. RRK's counsel repeatedly argued with witnesses over the issue, having never defined what exactly a "Spiral Saw" is and offering absolutely no foundation that the witness in question was even *qualified* to opine on whether

something was a "saw."

RRK wasn't merely using its trademark in a generic sense -- instead, RRK used its ill-defined trade name to create an artificial distinction between its tools and other tools on the market, and to draw attention away from the fact that it had *admitted* that its tool was nothing more than a router. Unable to identify meaningful *structural* differences among various tools, RRK used the *trade names* of the tools to draw illusory distinctions. And of course RRK's repeated misuse of the "Spiral Saw" trademark made it appear as if Sears had misappropriated the "Spiral Saw" itself, not the plunge base accessory. RRK's incessant shifting of the jury's attention to "Spiral Saws" instead of the plunge base accessory, the core issue in this case, only created confusion. The jury's verdict, which included damages for the *tool itself*, not just the plunge base accessory, indicates RRK's ruse was successful. Accordingly, the Court should grant a new trial so that Sears can have a fair hearing on whether it misappropriated the concept of a *plunge base accessory*, not on whether it "misappropriated" the non-trade-secret "Spiral Saw."

## 2. RRK Mischaracterized Statements In Documents As Having Been Adopted By Sears

As part of its effort to make the trial about the "Spiral Saw" instead of the plunge base accessory, RRK made unfair use of statements found in documents produced by Sears, even though those statements were not directed to the plunge base accessory and even though Sears *never adopted those statements*. An adoptive admission is "a statement of which the party has manifested an adoption or belief in its truth." Fed.R.Evid. 801(d)(2)(B). However, mere possession of a document does not constitute an adoptive admission of the statements contained in that document. *U.S. v. DeLuca*, 2001 WL 1654770 (N.D.Ill.). Though the Court sustained many of Sears' objections to this type of evidence (See, e.g., Tr. 647-649), at least two

documents "slipped through" over Sears' objections, which RRK then strongly emphasized on closing argument (See, e.g., Tr. 1372.)

The two documents at issue are the "Creative Brief" (PX 113) and the "Infomercial Marketing Candidate Information Sheet" (PX 109), which were both drafted by third parties. One referred to Sears' All-In-One Cutting Tool as "revolutionary" (PX 113) and the other referred to spiral cutting tools as "successful new" tools (DX 109). Both documents refer to the tool itself, not the plunge base accessory. Sears employees made a cursory review of each document, but their review was limited to the scope of their own knowledge, such as product specifications; they had no idea whether the product could properly be called "new" or "revolutionary." (Tr. 451-461.) After this cursory "review," a Sears employee passed the documents on to an outside advertising agency, which was working on an infomercial for Sears' All-In-One Cutting Tool in 2002. (Tr. 451-461.) Both documents were provided as general guidance only; and RRK offered no evidence that the final infomercial contained *any* of the statements in these two documents. In other words, Sears explicitly *declined* to adopt the statements contained in these documents.

Not only did RRK fail to establish any foundation for the statements in these documents, or that Sears adopted the statements in these documents, but the documents also further confuse the issue of whether this case is about the "Spiral Saw" tool itself (which is not a trade secret) or the plunge base accessory. The documents referred to Sears' All-In-One Cutting *Tool* as "new" and "revolutionary." The plunge base accessory was merely an accessory that was offered with the *tool*; even when the tool was sold *without* the plunge base accessory, it was still the All-In-One Cutting *Tool*. (Tr. 961-962.) In fact, these documents describe how the *tool* is "faster and more efficient than using hand saws, jig saws and scroll saws," nearly exactly the same language

that RRK used in its own advertisements *for the tool itself.* (Tr. 74-75, 210; DX 259, DX 72.) RRK particularly emphasized these documents on closing. (Tr. 1372.) Combined with RRK's repeated misuse of the "Spiral Saw" trademark, it is clear that RRK encouraged to jury to punish Sears for "misappropriating" the "Spiral Saw" itself -- which of course was not a trade secret. This deliberate confusion renders the jury's verdict unsupportable and the Court should grant Sears a new trial absent these documents.

### 3. "Categories" and Advertising Did Not Render RRK's Product "New"

RRK added to the confusion by introducing evidence on how various persons "categorize" tools. (See, e.g., PX 110.) The inference RRK wanted the jury to draw was that if tools are in a different "category," then they must be different tools. All of this evidence was intended to persuade the jury that RRK's "Spiral Saw" was not a router but was, instead, somehow "completely different." But this evidence was again introduce only to confuse the jury, and RRK should not have been permitted to offer evidence which contradicts its own admissions that its product is a router. Inferences must be grounded in facts, not merely unsupported allegations. *Menefee v. General Electric Company*, 548 F.Supp. 619, 621 (N.D.Ill. 1982). There is ample evidence in the record that "categories" are merely for marketing, and do not mean that a "tool" is new; tools having nearly the same structure cam be categorized differently depending on how they are marketed or how well they sell. (See, e.g., PX 110, Cordless Drills, Corded Drills; Tr. 363, 559.) And RRK's "Spiral Saws" once shared the same "category" at Sears as "rotary tools," which is again consistent with RRK's admissions before the U.S. Patent and Trademark Office. (Tr. 559.) RRK's discussion of "categories" merely distracted the jury from the core issues of the case and from its own prior admissions.

Similarly, that both RRK's and Sears' products were heavily advertised does not render these products "new." RRK invited the jury to infer that the "success" of its "Spiral Saw" was

the result of it being "new;" likewise RRK invited the jury to infer that the "success" of Sears' All-In-One Cutting Tool was the result of it being "new."[10] Neither of these inferences is supported by the evidence, because RRK never introduced any objective measure of a product's "success." In addition, the evidence indicates that heavy advertising, and especially heavy infomercial advertising, was the reason for these products' respective "success." (Tr. 223-224, 452-453, 561-564, 592-593, 650, 789-825.) Further, RRK never presented evidence that sales success was attributable to the plunge base accessory, as opposed to the tool itself. (See., e.g., Tr. 848.) RRK did not invent the drywall router, rotary cutting tool, or even the "Spiral Saw." It merely succeeded at convincing consumers that they needed one. By arguing that "success" meant that its "Spiral Saw" was a new tool, RRK again distracted the jury, confused the issues, and invited the jury to make its decision based on unsupportable inferences.

### 4. Sears' Proposed Demonstration Would Have Mitigated RRK's Confusion

Sears believes it could have alleviated much of this confusion with a simple demonstration of a router, laminate trimmer, rotary tool and "Spiral Saw," to show that they all could cut in any direction, with a spiral cutting bit, in a variety of materials. (Tr. 905-906.) Sears proposed that the demonstration be done live or, in order to avoid an unnecessary mess in the courtroom, that be done by a series of video clips. (DX 343 - DX 359.) RRK initially objected on the grounds that the tools used in the demonstration might, in some vague unidentifiable way, be different than those available to the public in 1999.[11] (Tr. 908-909.) The Court excluded the demonstration in part on that foundational basis, but Sears' witnesses readily provided that

---

[10] That RRK never tied the alleged "success" of the tool to the plunge base accessory is addressed in Sears' brief on damages.

[11] RRK's counsel made a number of other specious arguments, such as that the bits and tools used "didn't exist" in 1999, but there was ample evidence that they did, in fact, exist. Likewise RRK complained that one of the videos doesn't show a "spiral saw" (i.e., it showed the tool without a handle). All of these complaints could have been addressed on cross examination.

foundation, and the tools that Sears proposed to use in its demonstration were the very tools used throughout the trial by both parties. (Tr. 913, 932-953, 992-1017.)

The Court also indicated that a *demonstration* of tools being used exactly as they were intended to be used should have been "disclosed" in discovery. That is not a discovery issue. RRK introduced those tools into evidence, and accused those tools of not being able to do the same things its "Spiral Saw" could do. Demonstrating that they could is a simple matter of rebuttal evidence. The tools were produced during discovery, and there was ample discussion during discovery of their capabilities. Moreover, RRK's contention that certain tools and bits didn't exist in 1999 is utterly specious -- while it would be impossible to obtain in 2004 physical models of all tools made before 1999, there was ample testimony that nothing changed in these tools or bits since 1999. Sears simply wished to show the jury the *natural* result of using each of these tools exactly how they were *intended* to be used. Courts have previously allowed live demonstrations of tools in order to familiarize the jury with the operations of the tools. *See Veliz v. Crown Lift Trucks*, 714 F.Supp. 49 (E.D.N.Y. 1989) (the Court permitted, over plaintiff's objection, a live demonstration of the operation of a lift truck that was substantially similar, *but not identical*, to the truck operated by the plaintiff at the time he sustained his injuries). There is nothing to "disclose" here, as RRK identified nothing about Sears' proposed demonstration that would even show the tools being used in an unexpected manner. On the contrary, the decision of whether to permit a live demonstration is a relevancy issue under Fed.R.Evid. 401 and 403. Sears respectfully submits that the Court's refusal to let Sears provide a demonstration prejudiced Sears' ability to rebut the unfair and confusing claims that RRK's "Spiral Saw" was anything different from a router or a rotary tool.

### 5. RRK Violated The Court's Ruling on Sears' Motion In Limine

RRK also improperly introduced and argued purported "evidence" of spoliation despite

Sears' motion *in limine*, which the Court granted, to exclude any such argument or evidence. Despite its prior ruling, and over Sears' objection, the Court permitted RRK to elicit from Ralph Jones that his wife happened to spill a cup of coffee on his laptop. (Tr. 16-17, 769-772, 1371.) The incident happened in 2001, when Mr. Jones was no longer a Sears Canada employee.[12] The laptop was not a Sears laptop, and he did not even have it when he worked at Sears. (Id.) Nevertheless, RRK argued that "there went all the evidence," and that they would have been able to prove their claim but for Mrs. Jones' spilling that cup of coffee. RRK used this improper evidence to bolster its inability to provide any affirmative evidence, and to further inflame the jury by suggesting that Sears had somehow hidden evidence from them.

But, as Sears established in its earlier motion *in limine*, one cannot argue spoliation based on the non-production of evidence itself; proof that the allegedly spoliated evidence was potentially harmful is also required. Nor can one argue spoliation based upon a third party's actions. Not only is the fact of a "fried" laptop insufficient to argue spoliation, but there was no "evidence" to "fry" in any event. Of course, since neither Mr. nor Mrs. Jones were Sears employees, none of their actions are chargeable to Sears.

This "evidence" and resulting argument should never have been permitted before the jury, as a matter of law. RRK has the burden of proving its claims, and cannot merely dismiss its own lack of evidence by making false charges of spoliation. Yet that is exactly what RRK has done here, to Sears' detriment. There can be no doubt that allowing this "evidence" before the jury was prejudicial, given the jury's finding of "willfulness."

### 6. RRK Made Every Effort To Inflame The Jury

RRK also prevented Sears from receiving a fair trial by playing to the jurors' prejudices. RRK repeatedly cast itself as a "U.S." company and all others as "foreign" manufacturers who

---

[12] Of course, even Sears Canada is a third party to this lawsuit.

don't care about intellectual property rights. (Tr. 13:23, 15:8, 20:21, 21:6, 619:2-619:10; 1368:5, 1393-1394.) Arguments that serve no purpose other than to inflame the passions and prejudices of the jury are improper. *U.S. v. Waldemer*, 50 F.3d 1379, 1384 (7th Cir. 1995). In an industry where virtually every tool is made abroad, such references have no references and are a naked attempt to invite the jury to make its findings based upon passion and prejudice, instead of the evidence. The jury's verdict, being far in excess of any reasonable damages in this case, is evidence that its decision arose out of prejudice, not of careful weighing of the evidence.

## V CONCLUSION

This Court should grant judgment in favor of Sears as a matter of law, because RRK's alleged "trade secret" was nothing more than a plunge base accessory for a router, which was well known in the power tool industry. No amount of self-serving testimony from RRK that its "Spiral Saw" was something "revolutionary" and therefore different from a router can undo its own admissions before the U.S. Patent and Trademark Office. Moreover, this Court should take notice as a matter of law that when the U.S. Patent Office asserted that the concept of a plunge base accessory for a "Spiral Saw" was known, relying on similar accessories for routers and electric hand drills, RRK did not contest that assertion. RRK should be estopped from contesting that its product is a router. Because double-shaft, double-handle plunge base accessories were well known for routers in the power tool industry, Sears' plunge base accessory does not fall within the scope of RRK's alleged trade secret and cannot be liable to RRK.

The Court should also grant judgment in favor of Sears as a matter of law because there is no evidence of misappropriation, other than the mere coincidence that third party Ralph Jones happened to speak to Ray Holbrook from time to time. Coincidence, in and of itself, is not sufficient evidence of intent, especially given the gross dissimilarity between RRK's proposed accessory and the accessory Sears purchased from Choon Nang. Moreover, the ubiquitous nature

of plunge base accessories for a variety of tools in the industry, which were nearly identical to Sears' plunge base accessory, is further evidence that, if anything, Sears' vendor derived its design from those accessories. Because RRK has failed to offer substantial proof to support the jury's verdict of misappropriation, Sears cannot be liable to RRK.

Finally, the Court should grant Sears a new trial on the issue of liability because RRK's pervasive efforts to confuse its allegedly secret plunge base accessory with the "Spiral Saw" itself, combined with its efforts to abuse its "Spiral Saw" trademark, and its efforts to inflame the jury with inappropriate comments and evidence of purported "spoliation" and foreign companies who purportedly don't care about intellectual property rights, deprived Sears of a fair trial on the merits of RRK's claims.

Dated: <u>December 5, 2007</u>

Respectfully Submitted,

/s/ Cameron M. Nelson _____
Richard D. Harris
Mark R. Galis
Jeffery G. Mote
Cameron M. Nelson
GREENBERG TRAURIG LLP
77 W. Wacker Drive, Ste. 2500
Chicago, IL 60601

Attorneys for Defendant
Sears, Roebuck and Co.

**CERTIFICATE OF SERVICE**

I, Cameron M Nelson, certify that on December 5, 2007, true and correct copies of this

SEARS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE

ALTERNATIVE, FOR A NEW TRIAL, ON THE ISSUE OF LIABILITY were served via the

Court's electronic filing system to:

> Mark M. Grossman, Esq.
> Lee F. Grossman, Esq.
> Grossman Law Offices
> 29 S. LaSalle Street
> Suite 1210
> Chicago, Illinois 60603

/s/ Cameron M. Nelson
Cameron M. Nelson
