IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RRK HOLDING COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 3944 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| SEARS, ROEBUCK AND CO., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before this Court are the post-trial motions of defendant Sears, Roebuck and Co.'s ("Defendant") and plaintiff RRK Holding Company ("Plaintiff"). For the reasons set forth below, Defendant's motion for judgment as a matter of law or, in the alternative, for a new trial or remittitur, on damages is denied; and Plaintiff's motion for prejudgment and post-judgment interests is granted.

In a two-count complaint, Plaintiff alleged that Defendant breached the Nondisclosure Agreement (Count I) and misappropriated Plaintiff's trade secret (Count II) by disclosing Plaintiff's next generation combination power tool. A jury trial was held from November 5, 2007 through November 19, 2007. On November 19, 2007, the jury returned a verdict finding Defendant liable for breach of the Nondisclosure Agreement and for misappropriating Plaintiff's trade secret. Judgment on the verdict was entered on November 27, 2007, awarding Plaintiff

-1-

$11,664,105 for actual losses, $1,688,136 for unjust enrichment, and $8,011,344 for punitive damages.

Subsequently, Defendant moves for judgment as a matter of law or, in the alternative, for a new trial or remittitur, on damages. Plaintiff moves to amend the judgment to include prejudgment interest and post-judgment interest.

**I. Defendant's Renewed Motion For Judgment As A Matter of Law or, In The Alternative, For a New Trial Or *Remittitur*, On Damages**

Defendant moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or for a new trial or remittitur pursuant to Federal Rule of Civil Procedure 59(a). Judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). In deciding the motion, the court will consider "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed…. In other words, [the court is] limited to assessing whether no rational jury could have found for the plaintiff." *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 629 (7th Cir. 1996). The court "may not step in and substitute its view of the contested evidence for the jury's." *Id.* at 634. For a Rule 59(a) motion for new trial, the party seeking relief must show that the jury awarded excessive damages, or the trial was not fair to the moving party. *See Gen'l Foam Fabricators, Inc. v. Tenneco Chem., Inc.*, 695 F.2d 281, 288 (7th Cir. 1982). If the court finds that damages are excessive, the proper remedy is *remittitur* rather than a new trial.

The court will order a new trial only if the plaintiff refuses to accept the remittitur. *See Davis v. Consolidated Rail Corp.*, 788 F.2d 1260, 1263 (7th Cir. 1986).

Defendant moves for judgment as a matter of law on five grounds: (1) Plaintiff offered insufficient evidence that Defendant's alleged trade secret misappropriation caused its damages; (2) Plaintiff's expert failed to limit the period for calculating damages to any "head start" period; (3) Plaintiff's expert's opinions were the product of unreliable methodology and unreasonable assumptions; (4) Plaintiff failed to apportion profits to just those associated with Defendant's alleged unlawful conduct; and (5) Plaintiff's lost profits damages were cut off as a matter of law in July 2002 when Dremel entered the market with a competing rotary cutting tool/plunge base product.

*A. Proof of Causation*

Defendant asserts that Plaintiff failed to prove that its damages were caused by Defendant's alleged trade secret misappropriation. Defendant argues that its price was significantly lower than Plaintiff's price for the spiral-saw tool, and that Plaintiff had presented no evidence that the plunge base accessory (the trade secret), as opposed to the tool components and accessories (non-trade secret), drove the sales. Thus, Defendant contends, the evidence is insufficient to show that consumers purchased Defendant's product due to the alleged trade secret component; rather the Defendant's lower price likely drove consumers to purchase from Defendant instead of Plaintiff. Defendants argue if the trade secret component did not cause the loss of profits, Plaintiff cannot claim the damages.

In the previous summary judgment opinion for this case, this court stated:

> Although a spiral saw and a plunge base router were marketed and known as separate products, the combination of the two into a single convertible product was not on the market, and was referred to as "new" and "innovative" by the Defendant itself. The Seventh Circuit has held that "a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *3M v. Pribyl*, 259 F.3d 587, 595 (7th Cir. 2001). The new combination of tools offered a lucrative and competitive product.

Defendant referred to the combination product as "new" and "innovative." The fact that Defendant sold it at a lower price may explain why consumers bought the product from Defendant rather than Plaintiff, but the trade secret causation is evidenced by the fact that Defendant sold the combination tool (and not just the component parts) at all. That is, had the trade secret not been misappropriated, consumers would not have had the option to buy from the Defendant, but would have presumably bought from the Plaintiff. The relative price Defendant charged for the combination tool does not preclude causation. Evidence that Defendant sold the combination tool shortly after the design was shared confidentially under a non-disclosure agreement to Defendant's employees is sufficient for a reasonable jury to find that there was misappropriation. Taking the evidence in the light most favorable to the Plaintiff, there is a legally sufficient evidentiary basis for a reasonable jury to find that the Plaintiff's lost profit was the result of the misappropriation of the combination concept, and not simply based on a lower price. While Defendant certainly may not agree with the jury's interpretation of the evidence, the evidence itself was sufficient for a reasonable jury to reach the verdict. Defendant's motion for judgment as a matter of law for lack of causation is denied.

*B. "Head Start" Period*

Defendant moves for judgment as a matter of law on the ground that Plaintiff failed to limit its damages claims to the time necessary to reverse engineer its trade secret product, i.e., the "head start" period. This issue was addressed by the jury instructions. This court gave jury instructions that were in line with the Illinois Trade Secret Act ("ITSA") and the relevant case law. In accordance with both the ITSA and the Uniform Trade Secrets Act ("UTSA), Jury Instruction No. 21 in this cases stated that damages can include Plaintiff's actual loss caused by Defendant's misappropriation and the unjust enrichment caused by the misappropriation that is not taken into account in computing Plaintiff's actual loss. While Illinois case law requires damages be limited to a head start period for injunctive relief, it has not made such a requirement for monetary damages. *See Schulenburg v. Signatrol*, Inc., 212 N.E.2d 865, 870 (Ill. 1965); *ILG Industries, Inc. v. Scott*, 273 N.E.2d 393, 396 (Ill. 1971); *Brunswick Corp. v. Outboard Marine Corp.*, 404 N.E.2d 205, 207 (Ill. 1980). The law does not support Defendant's contention. Defendant's motion for judgment as a matter of law for the "head start" period is denied.

*C. Expert Opinion*

Defendant moves for judgment as a matter of law on the ground that Plaintiff's damages expert used unreliable methodology and unreasonable assumptions. Defendant then goes on to criticize the methods used by Plaintiff's expert. This court held a Daubert hearing on July 28, 2005, from which it found Gemini to be a competent expert witness. While Defendant may not agree with Gemini's methods and analyses, Defendant had ample opportunity to challenge Gemini during cross-examination and through the testimony of Defendant's own witnesses.

Defendant's motion for judgment as matter of law on the unreliability and unreasonableness of Plaintiff's expert testimony is denied.

*D. Apportion profits to those associated with Defendant's alleged unlawful conduct*

Defendant's move for judgment as a matter of law on the ground that Plaintiff failed to apportion profits to those associated with Defendant's alleged unlawful conduct. Plaintiff essentially makes the same causation argument. As stated above, based on evidence provided that the combination tool was new and innovative, that distributors in the market (such as Home Depot) saw it as a new and marketable idea, and that it sold well in other contexts, this court simply cannot conclude that no rational jury could have found that the reason it sold well and was profitable was because of the new combination of tools. Making inferences in favor of the Plaintiff supports the verdict. Defendant's motion for judgment as a matter of law on this ground is denied.

*E. Dremel*

Defendant moves for judgment as a matter of law that Plaintiff's lost profits damages period should be cut-off in July 2002 on the ground that Dremel entered the market with a competing rotary cutting tool/plunge base product in July 2002. In support of this contention, Defendant cites to *SmithKline Diagnostics, Inc. V. Helena Laboratories Corp*., 926 F.2d 1161, 1165 (Fed Cir. 1991, a patent case that does not directly apply to the present trade secrets suit. Further, it is unclear whether Dremel's tool was similar enough to constitute a "non-infringing substitute product," as *SmithKline Diagnostics* requires. Based on the evidence presented at trial,

a reasonable jury could find for the Plaintiff, and Defendant's motion for judgment as a matter of law is denied.

*F. Excessive Award*

Defendant moves for new trial or an order of *remittitur* on the ground that the jury's damages award was excessive. Defendant argues that Plaintiff grossly inflated damages numbers because it failed to limit its damages to the "head start" period and failed to apportion profits to just those associated with the trade secret plunge attachment. Further, Defendant asserts that Plaintiff's expert gave a flawed analysis, and Plaintiff played on the passions of the jury by engendering "enormous sympathy" for the Korpas family and resentment towards Defendant. Finally, Defendant contends that this court gave inadequate jury instructions by declining to provide the jury with instruction on the "head start" limitation and limiting damages to the misappropriation.

As to the "head start" period, this court has already addressed this issue above. The court instructions to the jury are consistent with the relevant statutory and case law, and the trial was not unfair to the Defendant on this issue. Further, Jury Instruction No. 21 specifically states: "Damages can include RotoZip's *actual loss caused by Sears' misappropriation* and the *unjust enrichment caused by the misappropriation* that is not taken into account in computing RotoZip's actual loss." Italics added. This instruction is clear the damages are based on the actual loss and unjust enrichment *caused by the misappropriation*. Defendant's argument that damages were not limited to the misappropriation due to jury instructions or Plaintiff arguments

seems a complete oversight in light of this instruction. There is also no reason for this court to conclude that the jury's award was the product of confusion, passion and prejudice.

As to Plaintiff's expert Gemini's error, Plaintiff concedes that the jury used the incorrect figure of $11,644,105 provided in Gemini's Schedule 6 instead of the correct amount of $11,229,798 provided in Gemini's Schedule 4 for Plaintiff's actual lost profits. Total damages for trade secret misappropriation is the amount the Defendant gained from the misappropriation, including Plaintiff's actual loss plus Defendant's gain from the misappropriation on top of Plaintiff's actual loss. *See* Jury Instruction No. 21. What is being compensated is Defendant's actual gain, not Plaintiff's actual loss. Thus, Gemini's error is harmless, because the error did not change Defendant's actual gain, but only affected Plaintiff's actual loss. To correct the error, Plaintiff's lower actual loss amount would be off-set by an increase in the unjust enrichment amount in order to retain the same amount for the Defendant's actual gain. The unjust enrichment portion of damages is calculated by subtracting the Plaintiff's actual loss amount from Defendant's total gain amount. The jury found that the total gain by Defendant was $13,352,241, accounting for Defendant's profits for 27 months following Plaintiff's public disclosure of its trade secret in August 2001. How this amount is apportioned between actual loss and unjust enrichment on top of the actual loss does not change the total damages. Although there was an error in the amount used for Plaintiff's actual loss, this error was harmless to the calculation of damages. The damages awarded to Plaintiff were not excessive and Defendant's motion for new trial or order of *remittitur* is denied.

However, this court amends the judgment pursuant to Federal Rule of Civil Procedure 60(a) to reflect the actual loss amount of $11,229,798 and the unjust enrichment amount of

$2,122,433; as discussed above, the total compensatory damages award remains the same at $13,352,241.

**II. Plaintiff's Motion To Amend The Judgment Pursuant To Federal Rule Of Civil Procedure 59(e) To Include Prejudgment Interest And Post-Judgment Interest**

Plaintiff moves to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) to include prejudgment interest on the ground that a confidential and fiduciary relationship existed between Plaintiff and Defendant. Under Illinois law, prejudgment interest may be awarded by statute, by agreement of the parties, or by equity considerations. *See Chemetall GmbH v. ZR Energy, Inc.*, 2001 U.S. Dist. LEXIS 23716 (N.D. Ill. Sept. 14, 2001). It has been concluded that the Illinois Trade Secret Act does not provide for a statutory authorization to award prejudgment interest. See *Chemetall GmbH v. ZR Energy, Inc.*, 2001 U.S. Dist. LEXIS 23716 (N.D. Ill. Sept. 14, 2001); *C&F Packing Co. v. IBP, Inc.*, 224 F.3d 1296, 1304 (Fed. Cir. 2000). In the present case, the parties have not agreed on the payment of prejudgment interest. Thus, the only remaining question is whether prejudgment interest should be awarded based on equity.

Prejudgment interest is awarded on equity grounds for cases involving breach of fiduciary or confidential relationship, where the award would make the injured party complete or whole by "forcing the fiduciary to account for profits and interest he gained by the use of the injured party's money." *In re Estate of Wernick*, 535 N.E.2d 876, 886 (Ill. 1989); *Chemetall GmbH v. ZR Energy, Inc.*, 2001 U.S. Dist. LEXIS 23716 (N.D. Ill. Sept. 14, 2001). "The award of prejudgment interest is particularly appropriate in a case...where the violation was intentional, and indeed outrageous." *Gorenstein Enters. v. Quality Care-USA*, 874 F.2d 431, 436 (7th Cir. Ill.

1989).  In a similar trade secret case in this district, Judge Schenkier awarded prejudgment interest on the compensatory damages from trade secret misappropriation. Judge Schenkier reasoned that the sales profited by the defendant "that would have fallen to [plaintiff] but for [defendants'] use of [plaintiff's] trade secret...militate in favor of a prejudgment interest award...because it reflects lost money on which plaintiff could earn interest." *Id*. Judge Schenkier limited the prejudgment interest to actual loss only. *Id*. This reasoning can be applied directly to this case, where, but for Defendant's trade secret misappropriation, Plaintiff would not have suffered the actual loss amount. Had Plaintiff retained this amount, it could have earned interest on it. Thus, this court finds equitable reason to award prejudgment interest.

Defendant contends that prejudgment interest should not be awarded because punitive damages were already awarded. Defendant relies on *Fortino v. Quasar Co.*, 950 F.2d 389, 397 (7th Cir. Ill. 1991) and *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627 (7th Cir. Ill. 1996), cases involving age discrimination and Title VII discrimination claims. These cases are not directly applicable to the present case, because they do not involve a confidential or fiduciary relationship, where prejudgment interest is awarded on equity grounds. Further, these cases involve double or triple punitive damage schemes, which sometimes may serve in lieu of prejudgment interest on the compensatory portion of the award. *Fortino v. Quasar Co.*, 950 F.2d 389, 396 (7th Cir. Ill. 1991). In the present case, punitive damages did not rise to double or triple the compensatory damages. Further, "to award prejudgment interest on the compensatory damage award is to award the full amount of compensatory damages the Court finds the plaintiff entitled to under principles of fairness and equity; it is not to impose an additional penalty." *Chemetall GmbH v. ZR Energy, Inc*., 2001 U.S. Dist. LEXIS 23716, F.N. 10 (N.D. Ill. Sept. 14,

-10-

2001). Thus, the fact that punitive damages were also awarded does not preclude the awarding of prejudgment interest.

Defendant also argues that prejudgment interest should not be awarded because it is unclear how much of the compensatory damages were attributable to the trade secret misappropriation and how much was attributable to the breach of contract. Breach of contract damages do not warrant prejudgment interest. *See Chemetall GmbH v. ZR Energy, Inc.*, 2001 U.S. Dist. LEXIS 23716, (N.D. Ill. Sept. 14, 2001). Defendant asserts that Question 6 and 7 of the Jury Verdict Form is ambiguous as to whether the damages were awarded for the breach of contract claim or the trade secret misappropriation claim. Question 6 reads: "If you have found Sears Liable for breach of contract (by answering YES to Question No. 3), and/or trade secret misappropriation (by answering YES to Question No. 4) do you also find that RRK has proven, by a preponderance of the evidence, actual losses caused by Sears?" Question 7 read: "If you answered YES to Question 6, what is the amount, proven by a preponderance of the evidence, which constitutes RRK's actual losses caused by Sears' conduct?" The "actual losses" in Question 7 refer to Question 6. Because Question 6 refers to both the breach of contract and the trade secret misappropriation claims, Defendant argues it is unclear whether "actual losses" refers to the breach of contract or the trade secret misappropriation. However, there is no reason to make the "actual loss" damages for breach of contract and for trade secret misappropriation separate and distinct. The calculation of "actual loss" damages for the breach of the non-disclosure contract is the same as the "actual loss" for the trade secret misappropriation. This is because the two claim account for the same act–disclosure of the trade secret. Although the legal claims are separate, the practical calculation for the damages resulting from the disclosure of the

trade secret is the same, which accounts for the wording of Question 6. The breach of a non-disclosure contract overlaps with the trade secret misappropriation claim, but does not negate the damages calculation. The jury's affirmative answer to Question 4 and Question 8 shows that the jury did find trade secret misappropriation, and the "actual loss" damages for Question 7 accounts for the trade secret misappropriation. The fact that it may also account for the breach of contract does not negate its use for trade secret misappropriation.

Finally, Defendant asserts that prejudgment interest should not be awarded because the calculation is too speculative. Defendant argues that because the actual losses did not extend past 2003, when Plaintiff sold its business assets to Bosch, the prejudgment interest should not extend beyond 2003 either. This is incorrect. Prejudgment interest is awarded in order to make the Plaintiff whole for the actual loss amount, from the time of misappropriation until the judgment, which was in November 2007 in this case. The sale to Bosch in July 2003 was taken into account in the calculation of actual loss. The prejudgment interest is calculated from the amount of actual loss, and does not depend on the date of sale. In the present case, the actual loss is $11,229,798, and using the federal prime rate, Plaintiff has calculated the prejudgment interest award through the judgment date of November 27, 2007 to be $3,715,479. Plaintiff's motion for prejudgment award of $3,715,479 is granted.

Plaintiff's motion for post-judgment interest is unopposed and granted. The post-judgment award of $1,931.50 per day until paid is awarded.

Defendant is ordered to pay Plaintiff $21,363,585.00 in total damages; $3,715,479.00 in prejudgment interest and $1,931.50 in post-judgment interest.

Enter:

/s/David H. Coar

_____

David H. Coar

United States District Judge

**Dated: May 27, 2008**